## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEREMY SPAK,** | : | **No. 24cv185** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **THE OSCAR SMITH COMPANY; and** | : | |
| **CLIFFORD MUENCH, owner and** | : | |
| **president of Oscar Smith,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Plaintiff Jeremy Spak asserts claims against his former employer, the Oscar Smith Company ("Oscar Smith"), for disability discrimination and retaliation pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, *et seq.* ("ADA") and the Pennsylvania Human Relations Act, 43 Pa. Stat. §§ 951, *et seq.* ("PHRA").  Spak also alleges that Defendant Clifford Muench, Oscar Smith's owner and president, is liable for unlawful and discriminatory employment practices under the PHRA's aiding and abetting provisions.

Before the court is a motion filed by defendants to dismiss Spak's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 7). Defendants' motion is ripe for disposition.

**Background**

At the heart of this case are Spak's allegations that defendants unlawfully terminated his employment with Oscar Smith because of his history of drug abuse—a decision he contends was driven by discriminatory bias rather than legitimate business reasons. Defendants hired Spak as a general laborer in the Oscar Smith's office located in Swoyersville, Pennsylvania in June 2022.[1] (Doc. 1, Compl. ¶ 15). Spak performed his job well, without any misconduct, for approximately six (6) months. (Id. ¶ 16). As alleged, during his employment with Oscar Smith, Spak received positive feedback. (Id.)

Plaintiff contends that he voluntarily checked himself into an in-patient rehabilitation program for opiate addiction more than six (6) months before commencing his employment with Oscar Smith. (Id. ¶ 17). According to Spak's complaint, he was in rehab from the first week of November 2021 until Thanksgiving of 2021. (Id. ¶ 18). It is alleged that Spak had not used opiates or other illegal drugs since completing rehabilitation. (Id. ¶ 19). Specifically, Spak avers that he did not engage in the use of illegal drugs during his employment with Oscar Smith. (Id.)

---

[1] These background facts are derived from plaintiff's complaint. At this stage of the proceedings, the court must accept all factual allegations as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted). The court makes no determination, however, as to the ultimate veracity of these assertions.

At the time of his hiring nor at any point during his employment, did Spak voluntarily disclose his history of addiction to Oscar Smith or its owner and president, Defendant Muench. (Id. ¶ 20). However, as alleged, he may have alluded to his history of addiction during a conversation with Defendant Muench's son, Kevin Muench. (Id. ¶ 21). The conversation concerned Kevin Muench's sister—also Defendant Muench's daughter— and focused on her repeated stints in rehabilitation programs. (Id.) According to Spak, he may have remarked that he could relate to her situation, but did not reveal that he also had undergone rehabilitation for substance abuse. (Id. ¶ 22). The complaint does not state when the conversation between Kevin Muench and Spak took place.

On December 12, 2022, Defendant Muench, Oscar Smith's owner and president, instructed Spak through a text message to attend work early in the morning. (Id. ¶ 23). When Spak arrived to work, Muench was the only one present at the shop. (Id. ¶ 24). Muench informed Spak that he would provide the transportation to the job site. (Id.) While on the road, Defendant Muench allegedly inquired about Spak's drug recovery and whether he was attending "any meetings or doing anything else to stay sober." (Id. ¶ 25). In response, Spak explained that he was a "one and done" case as he had voluntarily committed himself to rehabilitation when he decided to end his drug use. (Id. ¶ 26). Spak further explained to Defendant Muench that he did not believe he

3

needed to attend sobriety meetings. (Id.) Spak also emphasized that each individual is different. (Id.) Per Spak, he thought the conversation went well as he continued the rest of the workday without incident. (Id. ¶¶ 27-28).

The following day, however, Defendant Muench instructed Spak that the "job was cancelled and therefore there was no work for him." (Id. ¶ 29). Then, on December 14, 2022, when Spak called Defendant Muench to inquire whether he was needed at work, Muench responded in the negative and told him that he would call him later. (Id. ¶ 30). That same day, Muench called Spak to terminate his employment. (Id. ¶ 31). Muench allegedly told Spak over the phone that he could not trust him any longer since he was not attending any sobriety meetings. (Id. ¶ 32). Defendant Muench used his daughter's drug abuse history as an example to assert that he did not think that someone could recover without being in rehabilitation. (Id. ¶ 33-34). Per Spak, Muench disclosed that his daughter was in and out of rehabilitation and she was stealing from him. (Id. ¶ 33). In response, Spak offered to take a drug test on the spot to prove that he was "clean and sober." (Id. ¶ 35). At first, Muench agreed, but he later changed his mind and reiterated that he did not want Spak working for him. (Id. ¶ 36).

Based on the above events, Spak's complaint maintains several causes of action. Count I advances claims for discrimination and retaliation under the ADA against Oscar Smith. Count II asserts claims for discrimination and retaliation

4

under the PHRA against Oscar Smith. Count III alleges that Defendant Muench aided and abetted Oscar Smith in engaging in unlawful and discriminatory employment practices in violation of the PHRA.

Defendants seek to dismiss all causes of action asserted in Spak's complaint, that is, his various ADA and PHRA claims on the ground that they fail to comply with the federal pleading standards.

**Jurisdiction**

Because Spak asserts claims pursuant to the ADA, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over the plaintiff's PHRA claims pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

Defendants filed their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)).  That means, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

On a motion to dismiss for failure to state a claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted).

6

## Analysis

The court will first address Spak's ADA and PHRA claims for disability discrimination and retaliation before moving on to his PHRA claims for aiding and abetting.[2]

### 1. Plaintiff's ADA/PHRA Discrimination Claims

Counts I and II of plaintiff's complaint allege disability discrimination pursuant to the ADA/PHRA.[3]  (Doc. 1, ¶¶ 48-60).  Defendants argue that Spak failed to present sufficient factual allegations in his complaint to allow his disability discrimination claims to proceed under a disparate treatment theory. (Doc. 8, Def. Br. in Supp. at ECF p. 10).

Congress enacted the ADA "to provide civil rights protections for persons with disabilities." Ford v. Schering-Plough Corp., 145 F.3d 601, 606 (3d Cir. 1998) (quoting H.R. Rep. No. 101–485, pt. 3, at 48 (1990), reprinted in 1990 U.S.C.C.A.N. 267, 471).  In the employment context, the ADA prevents covered

---

[2] Counts I and II of plaintiff's complaint assert ADA and PHRA claims using the same legal theories. The court will address plaintiff's ADA and PHRA claims collectively under the same legal standard. See Morgan v. Allison Crane & Rigging LLC, 114 F.4th 214, 220, n. 21 (3d Cir. 2024) ("federal courts should continue to interpret the PHRA in harmony with the ADA."); Colwell v. Rite Aid Corp., 602 F.3d 495, 500, n. 2 (3d Cir. 2010) ("[T]he same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA.").

[3] Spak alleges that defendants terminated his employment due to his actual disability, his record of disability, and because they regarded him as being disabled. (Doc. 1, Compl. ¶¶ 52, 54, 59). At this stage of the proceedings, the court will not address Spak's disability discrimination claim under each individual definition of disability. Rather, the court will take a holistic approach.

entities from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Plaintiff alleges disability discrimination based upon disparate treatment. To recover under this theory of liability, plaintiff must establish that: 1) he is disabled within the meaning of the ADA; 2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) he has suffered an otherwise adverse decision as a result of discrimination.  See Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000).

Prior to addressing defendants' arguments, Spak's complaint alleges that his history of drug addiction qualifies as a disability within the meaning of the ADA and PHRA. (Doc. 1, Compl. ¶ 41).[4]  Per Spak, his alleged disability

---

[4] Recovering drug addicts who are receiving treatment for drug addiction or who have been rehabilitated successfully are protected by the ADA from discrimination on the basis of past drug addiction. Salley v. Cir. City Stores, Inc., 160 F.3d 977, 980 n.2 (3d Cir. 1998); 42 U.S.C. § 12114; 29 C.F.R. § 1630.3.  Put differently, in order for an employee to be deemed disabled by his status as a recovering drug addict, he must be addicted to drugs but no longer "currently engaging" in illegal use. Salley, 160 F.3d at 980 n.2. Whether an employee is "recovering" or "currently engaging" in illegal drug use is determined on a case-by-case basis. Id.; see also Suarez v. Pennsylvania Hosp. of Univ. of Pennsylvania Health Sys., 2018 WL 6249711, at *6 (E.D. Pa. Nov. 29, 2018).

Additionally, a person who " 'is erroneously regarded as engaging in [the use of illegal drugs], but is not engaging in such use,' shall be construed as a qualified individual with a disability." Herman v. City of Allentown, 985 F. Supp. 569, 576 (E.D. Pa. 1997) (quoting 42 U.S.C. § 12114).

substantially impaired his ability to engage in major life activities such as

"socializing with family and friends, caring for himself, and attending work on a

daily basis."[5] (Id.)  The motion to dismiss does not challenge the disability

element of Spak's *prima facie* case.  (Doc. 8, Def. Br. in Supp. at ECF pp. 10-11).

Defendants, however, assert that the complaint lacks the requisite specificity as

to the remaining elements of Spak's *prima facie* case. (Id.)

Regarding the second element of Spak's *prima facie* case of disability

discrimination—that he is otherwise qualified to perform the essential functions of

the job, with or without reasonable accommodations by the employer—

defendants contend that the complaint is devoid of clear documentation or

substantiation that would unequivocally show that Spak was performing all

essential job functions satisfactorily. (Id. at ECF p. 11).  Spak counters that at this

---

Here, Spak alleges that he was a recovering drug addict within the meaning of the ADA during
the time of his employment with Oscar Smith. (Doc. 1, Compl. ¶ 43). Spak also alleges that he
did not use opiates or other illegal drugs at any time during the course of his employment with
Oscar Smith. (Id. ¶ 19).  Accepting Spak's factual allegations as true, he is thus protected by
the ADA from discrimination on the basis of his past drug addiction.

[5] Socializing could be deemed a major life activity for ADA purposes. "The activity of
interacting with others is substantially limited only where an individual's socialization is
'characterized on a regular basis by severe problems such as high levels of hostility, social
withdrawal, or failure to communicate when necessary.' " Peter v. Lincoln Tech. Inst., Inc., 255
F. Supp. 2d 417, 433 (E.D. Pa. 2002) (quoting Olson v. Dubuque Cmty. Sch. Dist., 137 F.3d
609, 612 (8th Cir.1998)).

As for working, "a court must consider an individual's training, skills and abilities in order to
evaluate whether their particular ailment constitutes, for that particular person, a significant
limitation on employment." Id. at 435.

stage of the proceedings, he is only required to plausibly allege that he meets the minimum prerequisite to perform his job. (Doc. 9, Br. in Opp. at 8). The court agrees.

Spak alleged that he worked for defendants for approximately six (6) months, performed his job well, and received positive feedback without any disciplinary action taken against him. (Doc. 1, Compl. ¶¶ 15, 16, 30, 31). By arguing that Spak needed to present evidence proving that he was performing his tasks effectively, defendants seek to fast-forward this case to the summary judgment phase. At this juncture, Spak does not need to present any evidence that would substantiate his allegations. Summary judgment is a more appropriate vehicle to assess the strength of Spak's allegations, alongside his evidence.

To further argue that Spak was not qualified for his position, defendants assert that Spak's failure to disclose his past drug addiction at the time of hiring is fatal to his allegations that he was qualified to perform the job. (Doc. 8, Def. Br. in Supp. at ECF p. 11). Per defendants, Spak's job required full disclosure of

conditions that could impact job performance for safety-sensitive roles.[6] (Id.)

Defendants' argument is flawed in that respect.[7]

Section 12112(d) of the ADA provides that, prior to making an offer of employment, an employer cannot "conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d). Hence, "a violation of §12112(d) occurs at the moment an employer conducts an improper medical examination or asks an improper disability-related question, regardless of the results or response." Green v. Joy Cone Co., 107 F. App'x 278,

---

[6] Whether Spak's position at Oscar Smith qualified as a safety-sensitive role is best determined after discovery.

[7] As the Third Circuit Court of Appeals noted in Taylor v. Pathmark Stores, Inc., "one of the points of 'regarded as' protection is that employers cannot misinterpret information about an employee's limitations to conclude that the employee is incapable of performing a wide range of jobs." 177 F.3d 180, 190 (3d Cir. 1999). The Court of Appeals permits a "regarded as" claim of disability discrimination to move forward even if the employer is innocently wrong about the extent of plaintiff's impairment because:

> Although the legislative history indicates that Congress was concerned about eliminating society's myths, fears, stereotypes and prejudices with respect to the disabled, the EEOC's Regulations and Interpretive Guidelines make clear that even an innocent misperception based on nothing more than a simple mistake of fact as to the severity, or even the very existence, of an individual's impairment can be sufficient to satisfy the statutory definition of a perceived disability. Thus whether or not [the defendant] was motivated by myth, fear or prejudice is not determinative of [the plaintiff's] "regarded as" claim.

Id. at 191 (quoting Deane v. Pocono Med. Ctr., 142 F.3d 138, 144 (3d Cir. 1998)).

280 (3d Cir. 2004).[8]  However, the ADA permits employers to make disability-related inquiries of employees if such inquiries are job-related or consistent with business necessity. 42 U.S.C. § 12112(d)(4)(A).

At this juncture, the court cannot determine whether the defendants had a policy requiring disclosure of past drug addiction, whether they inquired into Spak's medical history upon hiring, or whether Spak's history of addiction affected his ability to perform the essential functions of his job.  Further discovery is needed in this regard.  Considering the facts in the light most favorable to Spak, he has sufficiently pled that he was qualified to perform the essential functions of the job.

Defendants also challenge the third element of Spak's *prima facie* case, that is, the existence of a link between his disability and his termination.  (Doc. 8, Def. Br. in Supp. at ECF pp. 11-12).  Spak has pointed to allegations in his complaint establishing a causal connection between his disability and termination. (Doc. 9, Br. in Opp. at 9-10).  The complaint alleges that defendants terminated Spak within two (2) days of Defendant Muench inquiring about Spak's drug recovery process. (Doc. 1, Compl. ¶¶ 23-31).  While firing Spak, Muench

---

[8] The ADA implementing regulations provide that covered entities may not "use qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities, on the basis of disability, unless the standard, test, or other selection criteria, as used by the covered entity, is shown to be job related for the position in question and is consistent with business necessity." 29 C.F.R. 1630.10(a) (2019).

allegedly explained that the reason for his termination was Spak's failure to "attend[ ] any group meetings or AA meetings to continue his recovery". (Id. ¶¶ 31-34). Muench allegedly noted that he had been fooled by his daughter who had been in and out of rehabilitation and had been stealing from him. (Id. ¶ 33). Hoping to keep his job, Spak offered to take a drug test on the spot to prove that he was clean and sober. (Id. ¶ 35). However, Muench insisted on firing Spak. (Id. ¶ 36). Lastly, the day after Spak's termination, Muench replied to Spak's message by stating "I've been through a daughter with addition [sic] and was fooled. I hope you are clean and on a recovery road. I do like you and hope the best[.]"[9] (Doc. 1-1, at ECF p. 3).

Taken together, the foregoing allegations and the text message exchange between Spak and Defendant Muench support the inference that Spak's termination resulted from his disability. When reviewing the overall scenario in a light most favorable to Spak, he has established the elements necessary to

---

[9] Spak attached to the complaint the text message exchange between him and Defendant Muench from the days surrounding his termination date. (Doc. 1-1). Under the law, courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when deciding a Rule 12(b)(6) motion. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). A court may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Id. (citations omitted). Furthermore, where a document is integral to or explicitly relied upon in the complaint, it may be considered without converting a motion to dismiss for failure to state a claim into one for summary judgment under Rule 56. Doe, 30 F.4th at 343 (citations and internal quotation marks omitted).

sustain a *prima facie* case of disability discrimination.  The defendants' motion to dismiss Spak's ADA/PHRA claims of disability discrimination in Counts I and II will thus be denied.

## 2. Plaintiff's ADA/PHRA Retaliation Claims

Defendants also move to dismiss Spak's ADA/PHRA retaliation claims. To establish a *prima facie* case of retaliation in the ADA context, a plaintiff must prove: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002) (citation omitted).

Defendants assert that Spak's complaint fails to allege that he actually engaged in a protected activity. (Doc. 8, Def. Br. in Supp. at ECF p. 8). According to defendants, Spak's alleged act of defending himself as a person in recovery does not rise to the level of a protected activity under the ADA and PHRA. (Id. at ECF pp. 8-9; see Doc. 1, Compl. ¶¶ 43, 54, 59).

A protected activity includes bringing or participating in formal actions to enforce ADA rights.  Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 188 (3d Cir. 2003).  Moreover, informal activity, such as requesting an accommodation for a disability, constitutes a protected activity under the ADA. Id.

14

These principles follow from the ADA retaliation provision which protects "any individual" who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA. 42 U.S.C. § 12203(a). "Thus, it is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA." Shellenberger, 318 F.3d at 188.

As alleged, Spak was fired because Defendant Muench harbored prejudice against individuals who have a drug addiction history and relied upon stereotypes of those in recovery. Such bias is unlawful under the ADA. Spak did not request any accommodation from defendants, such as reduction in work hours, time off to see a doctor, or assistance in completing his tasks. To the contrary, Spak merely sought to assure Muench that he was sober and capable of performing his job. (Doc. 1, Compl. ¶¶ 26, 35, 38). According to the plaintiff, defendants did not even give Spak the opportunity to request an accommodation; they terminated him within two days of learning about his past drug addiction, without engaging in an interactive process.[10] Thus, by opposing Muench's unlawful retaliation under the ADA, Spak engaged in a protected activity.

---

[10] It is not necessary that the employee himself or herself notify the employer of a need for accommodation. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 313 (3d Cir. 1999). The question is whether the employer has received fair notice of that need. Id. (notice was sufficient where it was given by a member of the employee's family, so long as "the employer must know of both the disability and the employee's desire for accommodations for that disability."). As the Third Circuit Court of Appeals has determined, once the employer knows

Additionally, Spak's termination could qualify as a retaliation for perceived protected activity under the ADA. Under the law, the ADA also protects an employee against retaliation for perceived protected activity. Fogleman, 283 F.3d 565, 571. "Because the statutes forbid an employer's taking adverse action against an employee for discriminatory reasons, it does not matter whether the factual basis for the employer's discriminatory animus was correct . . . so long as the employer's specific intent was discriminatory, the retaliation is actionable." Id. 565. As the Third Circuit Court of Appeals pointed out, " '[d]iscrimination' refers to the practice of making a decision based on a certain criterion, and therefore focuses on the decisionmaker's subjective intent." Id. at 571. Hence, if "[plaintiff] can show, as he claims, that adverse action was taken against him because [defendant] thought that he was . . . engaging in protected activity, it does not matter whether [defendant's] perception was factually correct." Id. at 571-72.

In this regard, the alleged telephone conversation on the day of Spak's termination is indicative of Defendant Muench's discriminatory motives, which were premised on Spak's perceived protected activity. Defendant Muench made the following statements over the phone:

---

of the disability and the desire for the accommodation, it has the burden of requesting any additional information that it needs. Id. at 315. Then, the employer must engage in the interactive process and make a reasonable effort to determine the appropriate accommodation. Id. at 316.

> • I don't want you working for Plaintiff [sic] anymore because you're not attending any group meetings or AA meetings to continue your recovery. I don't trust you.
> • I've been fooled by my daughter who's been in and out of rehab [and who has been] stealing from [me].
> • I don't want someone like you working for me because I don't think it's possible for someone to be recovered and not in a rehab program.

(Doc. 1, Compl. ¶¶ 32-34).

Focusing on Defendant Muench's subjective intent, his statements reveal that he terminated Spak based on his personal experience with his daughter's drug recovery, not because of Spak's poor performance at work. As alleged, Defendant Muench assumed that Spak's addiction recovery history mirrored his daughter's and acted on this assumption. Muench's decision was therefore driven by stereotypes rather than facts. Accordingly, Spak's compelled disclosure of his recovery process, his offer to willingly take a drug test, and his explanation that he did not need to attend sobriety meetings could support the inference that Muench perceived Spak as engaging in protected activity.

Regarding the second and third elements of a *prima facie* retaliation case, that is adverse action and causation, defendants fired Spak within two days after Defendant Muench learned of Spak's history of addiction and his decision not to attend sobriety meetings. (Doc. 1, Compl. ¶¶ 23-31).

Spak has thus alleged sufficient facts to establish an adverse employment action and a causal connection between his protected activity and that adverse

17

action. Hence, Spak has plausibly pled his *prima facie* case of ADA/PHRA

retaliation. For this reason, the defendants' motion to dismiss the ADA/PHRA

retaliation claims in Counts I and II will be denied.

### 3. Plaintiff's PHRA Claim of Aiding and Abetting

Spak alleges that Muench, in his capacity as owner and principal officer of

Oscar Smith, aided, abetted, incited, and even coerced Oscar Smith to engage in

the unlawful and discriminatory employment practices described above. (Id. ¶¶

44, 62). Spak's aiding and abetting discrimination claim is premised upon 43 PA.

STAT. § 955(e), which contemplates liability that extends beyond federal anti-

discrimination statutes. See Dici v. Commw. of Pa., 91 F.3d 542, 552 (3d Cir.

1996).

Under the PHRA, a plaintiff can sustain PHRA claims against a defendant in

their individual capacity. Section 955(e) of the PHRA makes it unlawful:

> For any person, employer, employment agency, labor
> organization or employe, to aid, abet, incite, compel or
> coerce the doing of any act declared by this section to be
> an unlawful discriminatory practice, or to obstruct or
> prevent any person from complying with the provisions of
> this act or any order issued thereunder, or to attempt,
> directly or indirectly, to commit any act declared by this
> section to be an unlawful discriminatory practice.

43 PA. STAT. § 955(e).

In interpreting this statute, the Third Circuit has previously held that

supervisors can be liable for aiding and abetting discriminatory practices. Dici, 91

18

F.3d at 553. Furthermore, "an individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to § 955(e) for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision." Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C., 20 F.Supp.2d 885, 887 (E.D. Pa. 1998) (citing Dici, 91 F.3d at 552–53).

Here, Spak alleges that Defendant Muench acted in his capacity as the owner and president of Oscar Smith when he discriminated against him and terminated him on the basis of his disability. (Doc. 1, Compl. ¶¶ 4, 44). Spak's complaint plausibly alleges that Muench had the authority to materially alter the terms and conditions of Spak's employment and alleges, in detail, that Muench was the primary decisionmaker at Oscar Smith. (Id. ¶¶ 23-40). Additionally, Spak has pled sufficient facts demonstrating that Defendant Muench directly engaged in discriminatory conduct toward him. At this juncture, neither party disputes that Muench was a supervisory employee or an agent of Oscar Smith.[11] Hence,

---

[11] Defendants only assert that Spak failed to provide specific details as to how defendant Muench's conduct differs from that of Oscar Smith. (Doc. 8, Def. Br. in Supp. at ECF pp. 13-14). Defendants also argue that the complaint failed to state whether Muench had any authority regarding the enforcement of discipline and termination of Oscar Smith's employees. (Id. at ECF p. 14). The court disagrees. Spak alleges in the complaint that Muench was Oscar Smith's owner and principal officer who possessed the authority to materially alter Spak's employment terms and conditions. (Doc. 1, Compl. ¶ 44). These allegations are sufficient to establish Muench's role at Oscar Smith and his involvement in Spak's termination.

Muench's own discriminatory conduct may render him liable under 43 PA. STAT. § 955(e).  Spak's complaint can, therefore, withstand the defendants' motion to dismiss.[12]

## Conclusion

For the reasons set forth above, defendant's motion to dismiss will be denied.  An appropriate order follows.

Date: _8/20/25_

_____
JUDGE JULIA K. MUNLEY
United States District Court

---

[12] Defendants argue that the complaint fails to comply with the federal pleading standards. (Doc. 8, Def. Br. in Supp. at ECF p. 15).  Per defendants, Spak's complaint violates Rule 8 because it is devoid of factual allegations sufficient to make any of Spak's claims plausible. Nevertheless, as concluded above, the complaint contains sufficient facts allowing the court to draw a reasonable inference that defendants are liable for the various misconduct alleged by Spak. Hence, defendants' arguments that the complaint violates Rule 8 are unpersuasive.